IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ERIN L. MUNOZ,**

        **Plaintiff,**

v.                               **Civil Action 2:18-cv-581**
                                   **Chief Judge Edmund A. Sargus, Jr.**
                                   **Magistrate Judge Jolson**

**COMMISIONER OF**
**SOCIAL SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Erin L. Munoz, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI"). For the reasons set forth below, it is **RECOMMENDED** that Plaintiff's Statement of Errors (Doc. 9) be **OVERRULED**, and that judgment be entered in favor of Defendant.

**I.    BACKGROUND**

Plaintiff filed her application for SSI on August 25, 2014, alleging that she was disabled beginning September 1, 2013. (Doc. 7, Tr. 363). After her application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held the hearing on April 21, 2017. (Tr. 251–75). On August 23, 2017, the ALJ issued a decision denying Plaintiff's application for benefits. (Tr. 45–66). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–7).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on June 12, 2018 (Doc. 1), and the Commissioner filed the administrative record on September 24, 2018 (Doc. 7). Plaintiff filed her Statement of Errors (Doc. 9) on November 19, 2018, Defendant filed

an Opposition (Doc. 12) on January 30, 2019, and Plaintiff filed her Reply (Doc. 15) on February 20, 2019. Thus, this matter is now ripe for consideration.

### A. Relevant Hearing Testimony

Relevant here, Plaintiff testified at the administrative hearing that she has been unable to work since September 1, 2013. (Tr. 255). When the ALJ asked why she cannot work, Plaintiff testified that part of the reasons is her frequent need for a restroom break:

> Q. Okay tell me why you can't, cannot work. What prevents you from working?
>
> A. Well other than the chronic kidney problems that I have. With that, it's actually progressed into Stage 2 kidney disease now. I have chronic pain from that. I have chronic hydronephrosis, which is where I have infection. It causes me to have to go to the bathroom every few minutes. . . .

(Tr. 256). Plaintiff later elaborated, in response to her lawyer's questioning, that she needs to urinate three times an hour, sometimes more, because of the diuretic she takes for her kidney disease. (Tr. 264).

### B. Relevant Medical Background

Plaintiff has a number of physical and mental impairments. Most of which are not at issue here. What is before the Court is how often Plaintiff needs bathroom access. In October of 2013, Plaintiff had a right-side kidney stone removed (Tr. 550), and, in April 2014, she had bilateral kidney stones removed (Tr. 457). Dr. Benjamin Gibson performed both procedures, and, on October 24, 2014, he diagnosed Plaintiff with "kidney stones-recurrent urinary tract infection." (Tr. 795). In doing so, Dr. Gibson relied on diagnostic tests from 2012 through 2014. (*Id.*) In addition to kidney stones, Plaintiff's kidney disease causes flank pain, urinary tract infections, and renal insufficiency. (*See, e.g.*, Tr. 556 (kidney stones), 481 (flank pain), 800 (urinary tract infection), 1021 (renal insufficiency)).

### C. The ALJ's Decision

The ALJ found that Plaintiff had not engaged in substantial gainful employment since

August 25, 2014, the date of her application. (Tr. 47). The ALJ determined that Plaintiff suffered from the following severe impairments: post-traumatic stress disorder (PTSD); depressive disorder, not otherwise specified; chronic kidney disease with chronic renal insufficiency and pyelonephritis; and degenerative disc disease with radiculopathy. (*Id.*). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (Tr. 48).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except frequently climbing ramps or stairs, never climbing ladders, ropes, or scaffolds, frequently stooping, and frequently crawling. She can frequently handle with the right upper extremity. The claimant can have occasional exposure to extreme cold and wetness. She is limited to simple, routine, and repetitive tasks with goal-based production/work measured by end result, not pace work. *The claimant would be off task 10 percent of the day for bathroom breaks.* She is limited to low stress jobs, defined as only occasional decision making required and only occasional changes in the work setting. The claimant cannot interact with the public and only occasionally interact with coworkers and supervisors.

(Tr. 50–51) (emphasis added).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To

this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III. DISCUSSION

Plaintiff raises one error to the Court. (Doc. 9). She argues that the ALJ's decision should be reversed because the ALJ improperly accounted for Plaintiff's need for frequent restroom breaks. At base, Plaintiff argues that the state agency reviewers found that she needed frequent bathroom breaks, defined as one-third to two-thirds of the day. (Doc. 9 at 6). Plaintiff argues that by not adopting this limitation, the ALJ reversibly erred. (*Id.* at 6–9). The Undersigned disagrees for two reasons.

### A. Defining "Frequent"

State agency reviewing physicians Michael Lehv, M.D., and Leon D. Hughes, M.D., reviewed the record and completed physical residual functional capacity assessments in November 2014 and March 2015, respectively. (Tr. 283–84, 298–99). Dr. Lehv and Dr. Hughes opined that Plaintiff retained the capacity to perform light work with additional limitations, including: never climbing of ladders, ropes, and scaffolds; frequently climbing of ramps/stairs, stooping, and crawling, and crouching; and "[s]hould be allowed frequent bathroom breaks" (*Id.*). In evaluating these opinions, the ALJ found the state reviewers' use of the word "frequent" to be vague. (Tr. 63).

Plaintiff responds that the use of the word was not vague. Instead, relying on Social Security Ruling 83-10, Plaintiff argues that the state agency reviewers deliberately used the word "frequent" to mean "occurring from one-third to two-thirds of the time." *See* SSR 83-10, 1983 SSR Lexis 30 (defining exertional levels and defining "frequent" as "occurring one-third to two-

thirds of the time"). Said differently, Plaintiff argues that the state agency reviewers clearly meant that Plaintiff needed bathroom access for 160 to 320 minutes per day. (*See generally* Doc. 9 at 6–9).

Plaintiff, however, offers no legal support for this argument. While "frequently" is defined by the agency to assess postural, environmental, and manipulative limitations, the Undersigned has uncovered no examples of SSR 83-10 being applied to the need for restroom access in this way. The Undersigned also notes that the state agency reviewers ultimately concluded that Plaintiff could work. (Tr. 283–84, 298–99). If the reviewers had believed Plaintiff needed restroom breaks for up to two-thirds of the day, it is difficult to see how that would not have been work preclusive. Said differently, if Plaintiff needs the restroom for up to 320 minutes per day, how could she perform any job? Consequently, it was not unreasonable for the ALJ not to use the definition of "frequently" in SSR 83-10 in this context. Likewise, it was not error for the ALJ to classify the state agency reviewers' use of the word "frequent" as vague.

### B. Substantial Evidence

More important, the Undersigned concludes that substantial evidence supports the ALJ's crafted RFC. Regardless of what the state agency reviewers meant, the ALJ was responsible for determining what work Plaintiff could do. The ALJ thoroughly explained his consideration of Plaintiff's argument that her urinary frequency was work preclusive:

> The claimant's representative argued that her kidney impairments cause urinary frequency that prevents all full-time, competitive employment due to excessive bathroom breaks. However, as noted many times above, the claimant's medical records show that she usually had no urinary frequency, urgency, or dysuria. This is not to say that the claimant never has problems with urinary frequency or other dysuria. Admittedly, the medical records also include several complaints of such symptoms (e.g., Ex. 16F/98; 17F/2). However, these complaints are infrequent and inconsistent compared to the many records stating that the claimant had no urinary symptoms. Thus, the medical evidence of record as a whole shows that the claimant's symptoms are not of the frequency or severity alleged at the hearing and

5

> argued by the representative. Rather, the medical evidence as a whole shows that the claimant would be off task no more than 10 percent of the worktime for bathroom breaks. This would be 48 minutes or approximately 10 extra five-minute breaks per day in addition to regular breaks, which is more than enough time to accommodate the claimant's symptoms based on the infrequency of her complaints in the medical records. Additionally, the limitation to goal-based production, rather than pace work, also accommodates her need for extra bathroom breaks.

(Tr. 60).

Throughout his opinion, the ALJ summarized Plaintiff's medical history as the regulations require. *See* SSR 96-8p, 1996 WL 374184, at * 7; 20 C.F.R. § 416.945(a)(3) (requiring the RFC is assessed "based on all of the relevant medical and other evidence" of record). The ALJ acknowledged that, at times, Plaintiff reported urinary frequency (Tr. 60 (citing, *e.g.*, 16F/98; 17F/2)), but he ultimately found that Plaintiff "would be off task 10 percent of the day for bathroom breaks." (Tr. 60). To come to this conclusion, the ALJ cited, *inter alia*, the following records (listed chronologically):

- October 2014 stated that Plaintiff had no dysuria (Tr. 53 (citing Tr. 848) (denying dysuria))

- May 2015 (Tr. 55 (citing Tr. 1221–23) (denying dysuria))

- June 2015 (Tr. 55 (citing Tr. 1267, 1405, 1418 1230) (denying urinary abnormalities and dysuria))

- August 2015 (Tr. 56 (citing Tr. 1369–70 (showing no complaints of urinary frequency))

- November 2015 (Tr. 56 (citing Tr. 1391–92) (showing no complaints of urinary frequency))

- July 2016 (Tr. 57 (citing Tr. 1610–11 (showing no complaints of urinary frequency)))

- February 2017 (Tr. 59 (citing Tr. 1715 (denying urinary frequency))

- April 2017 (Tr. 59 (citing Tr. 1982–84 (reporting no urinary frequency))

The ALJ likewise noted that "although the medical evidence of records supports some limitations resulting from [Plaintiff's] impairments, the objective examinations and other

6

diagnostic techniques usually show only mild or moderate abnormalities and many normal findings." (Tr. 52). Importantly, no medical record states the frequency with which Plaintiff needs restroom access.

To accommodate Plaintiff's need for restroom access, the ALJ fashioned the RFC to include "48 minutes or approximately 10 extra five-minute breaks per day in addition to regular breaks." (Tr. 60). The ALJ additionally made clear that his opined limitation of goal-based production, rather than pace work, would also accommodate Plaintiff's need for restroom breaks. (*Id.*) As explained above, substantial evidence supports this conclusion. *See Rogers*, 486 F.3d at 241 (holding that substantial evidence is more than a scintilla but less than a preponderance).

## IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's Statement of Errors (Doc. 9) be **OVERRULED**, and that judgment be entered in favor of Defendant.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date: May 10, 2019                                          /s/ Kimberly A. Jolson
                                                                                KIMBERLY A. JOLSON
                                                                                UNITED STATES MAGISTRATE JUDGE